# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF TENNESSEE
# AT KNOXVILLE

| | |
|---|---|
| WALTERS & MASON RETAIL, INC., d/b/a ALTAR'D STATE, | )<br>)<br>) |
| *Plaintiff*, | ) Case No. 3:25-cv-39 |
| v. | ) Judge Atchley |
| HARTFORD FIRE INSURANCE COMPANY, | ) Magistrate Judge McCook |
| *Defendant.* | ) |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant Hartford Fire Insurance Company's Motion to Dismiss [Doc. 100]. For the following reasons, the Motion [Doc. 100] is **GRANTED,** and this matter is **DISMISSED WITH PREJUDICE**.

### I. BACKGROUND

This is an insurance dispute. Plaintiff Walters & Mason Retail, Inc. does business as Altar'd State, a faith-based closing company with stores across the United States. [Doc. 99 at ¶ 1]. To protect these stores (as well as other parts of its business), Waters & Mason purchased a comprehensive insurance policy from Hartford (Policy No. 61 UUN HN3281) covering the period of January 30, 2020, through January 30, 2021 ("Policy"). [*Id.* at ¶ 18. *See generally* Doc. 99-1]. Around the time the Policy became effective, the first cases of COVID-19 were being confirmed in the United States. [*See* Doc. 99 at ¶ 45]. As virus began rapidly spreading across the country, multiple states responded by issuing emergency orders temporarily closing certain types of businesses and/or requiring businesses to implement new pandemic procedures. [*See id.* at ¶ 60; Doc. 99-11].

These orders hit Walters & Mason hard, closing many of its stores for the duration of the pandemic and severely limiting its operations at others. [*See* Doc. 99 at ¶¶ 63–65; Doc. 99-11]. Faced with this reality, Walters & Mason turned to Hartford, asserting that the "business interruption losses it sustained at all of its retail store properties resulting from COVID-19, including as a result of the closures and lost sales[,]" were covered by the Policy. [Doc. 99 at ¶ 80]. Hartford disagreed and denied coverage. [*Id.* at ¶¶ 81–82]. Walters & Mason responded by filing suit, arguing that its COVID-19-related business losses are covered by the Policy, that Hartford breached its obligations under the Policy by denying coverage, and that this denial of coverage was in bad faith.[1] [Doc. 1].

Walters & Mason originally filed suit in the United States District Court for the Eastern District of Pennsylvania. [*Id.*]. There, this case sat idle for years as similar cases worked their way through the Third Circuit Court of Appeals and Pennsylvania Supreme Court. [*See* Docs. 43–44, 50, 52, 54, 56]. When these other cases eventually foreclosed Walters & Mason's claims under Pennsylvania law, Walters & Mason requested a do-over. That is, it requested leave to file an amended complaint and that this case be transferred to the Eastern District of Tennessee. [Docs. 58–59]. The Eastern District of Pennsylvania granted these motions and transferred this case where it was assigned to the undersigned. [*See* Doc. 65]. Thereafter, the Court permitted Walters & Mason a second opportunity to amend its complaint, and the instant Motion followed. [Docs. 97, 100].

---

[1] Walters & Mason's bad faith denial claim was originally premised on 42 Pa. Stat. Ann. § 8371. [Doc. 1 at ¶¶ 74–77]. When Walters & Mason was later granted leave to amend its complaint and transfer this case to the Eastern District of Tennessee, it changed the basis for its bad faith denial claim to Tenn. Code § 56-7-105. [Doc. 66 at ¶¶ 72–81].

2

## II. STANDARD OF REVIEW

On a motion to dismiss, the Court "must accept as true 'well pleaded facts' set forth in the complaint." *In re Comshare Inc. Sec. Litig.*, 183 F.3d 542, 548 (6th Cir. 1999) (citation omitted). "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). Generally, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007)). "The [plaintiff's] factual allegations, assumed to be true, must do more than create speculation or suspicion of a legally cognizable cause of action; they must show entitlement to relief." *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007). "Mere labels and conclusions are not enough; the allegations must contain 'factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Id.* at 575 (quoting *Ashcroft*, 556 U.S. at 678). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," *Iqbal*, 556 U.S. at 678, and the Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

## III. ANALYSIS

Before turning to the substance of the parties' arguments, the Court must first determine which law governs its interpretation of the Policy. Ordinarily, "[a] federal court sitting in diversity must apply the choice of law rules of the state in which it sits." *Rosen v. Chrysler Corp.*, 205 F.3d 918, 921 n.2 (6th Cir. 2000). But when a case is transferred from one district court to another, "the transferee court must apply the choice of law rules that the transferor court would have applied

3

had the case not been transferred." *Id.* Here, this means applying Pennsylvania's choice of law rules.

These rules require courts to first "determine whether [an actual] conflict exists between the laws of the competing states." *McDonald v. Whitewater Challengers, Inc.,* 116 A.3d 99, 106 (Pa. Super. Ct. 2015) (alteration in original and internal quotation marks omitted). If the laws do not conflict, then a choice-of-law analysis is unnecessary, and Pennsylvania law governs. *Id.*; *see also Hammersmith v. TIG Ins. Co.*, 480 F.3d 220, 230 (3d Cir. 2007). If, on the other hand, there are relevant differences between the laws, then a court must "examine the governmental policies underlying each law, and classify the conflict as a 'true,' 'false,' or an 'unprovided-for' situation." *Hammersmith*, 480 F.3d at 230. Only true conflicts (i.e., those where "both jurisdictions' interests would be impaired by the application of the other's laws") require a deeper choice-of-law analysis. *Id.* (emphasis omitted). The goal of this deeper analysis is to "determine which state has the 'greater interest in the application of its laws." *Id.* at 231 (quoting *Cipolla v. Shaposka*, 267 A.2d 854, 856 (Pa. 1970)). For contract claims, this means determining which state has "the most significant contacts or relationships with the contract" at issue. *Wilson v. Transp. Ins. Co.*, 889 A.2d 563, 571 (Pa. Super. Ct. 2005) (internal quotation marks omitted). Pennsylvania law instructs courts to consider the following factors in making this determination: "(1) the place of contracting; (2) the place of negotiation of the contract; (3) the place of performance; (4) the location of the subject matter of the contract; and (5) the domicile, residence, nationality, place of incorporation and place of business of the parties." *Hammersmith*, 480 F.3d at 233 (citing Restatement (Second) of Conflict of Laws § 188(2)).

Hartford asserts that the foregoing factors suggest that Tennessee law should govern the parties' coverage dispute. [Doc. 100 at 12]. At the same time, Hartford also argues that a choice-

of-law analysis is unnecessary as there is no true conflict between Tennessee and Pennsylvania law as Walters & Mason's claims fail under both. [*Id.* at 13]. Walters & Mason, on the other hand, argues that because it had insured stores in multiple states, the laws of each of those states should govern to the extent Walters & Mason's claims arose within their borders. [Doc. 102 at 15–18]. It argues in the alternative that Tennessee law should govern if the Court finds that only one state's laws apply to the coverage dispute. [*Id.* at 17–18]. As described below, the Court does find that only one state's laws apply to the coverage dispute, and it agrees with the parties that this state is Tennessee (to the extent it conflicts with Pennsylvania law).

Pennsylvania's choice-of-law rules reflect a clear "preference that only one set of laws govern a given insurance contract, and a disapproval of the possibility that the laws of different jurisdictions might apply to different risks under the policy." *Hammersmith*, 480 F.3d at 233 (internal quotation marks omitted). And while the rules "generally give the location of the insured risk 'greater weight than any other single contact[,]'" this weight is largely diminished "if the 'policy covers a group of risks that are scattered throughout two or more states[.]'" *Id.* (quoting Restatement (Second) of Conflict of Laws § 193 cmt. b). As a result, the location of the insured risk (i.e., the subject matter of the contract) does not weigh in favor of any state when applying the *Hammersmith* factors to a multi-state insurance contract. *Id.* at 233–35. Notwithstanding the foregoing, Walters & Mason argues that the multi-state nature of its policy should be given great weight in the Court's choice-of-law analysis. [Doc. 102 at 15]. Its arguments, however, are unconvincing, and the Court sees no reason here to deviate from Pennsylvania law's standard practice of identifying the one set of laws that govern an at-issue contract. Following that standard practice, the Court agrees with the parties that Tennessee law governs the Policy to the extent that Tennessee and Pennsylvania law conflict because Walters & Mason is a Tennessee corporation,

5

and the Policy was made and delivered to it in Tennessee. *Hammersmith*, 480 F.3d at 233; *see also* [Doc. 99 at ¶ 14; Doc. 100 at 12; Doc, 102 at 17–18].

Thus, the question becomes whether Pennsylvania and Tennessee law conflict. The answer to this question not only decides which law governs the parties' dispute but also dictates whether Hartford's Motion to Dismiss must be granted. Walters & Mason's COVID-19-related business losses would not be covered by the Policy under Pennsylvania law, a fact that both parties recognize. [Doc. 59-1 at 2; Doc. 100 at 15]. *See generally Ungarean v. CNA*, 323 A.3d 593 (Pa. 2024); *MacMiles, LLC v. Erie Ins. Exch.*, 323 A.3d 610 (Pa. 2024). If Tennessee law would similarly not extend coverage, then there is no true conflict between Pennsylvania and Tennessee law, and Walters & Mason's claims must be dismissed. *See Hammersmith*, 480 F.3d at 230–31. Accordingly, the Court will interpret the Policy using Tennessee law. If Tennessee law dictates that the Policy covers Walters & Mason's COVID-19-related business losses, then the Motion must be denied. But if Tennessee law does not extend coverage, then Walters & Mason's claims must be dismissed regardless of whether Tennessee or Pennsylvania law governs.

When interpreting a contract under Tennessee law, "[i]f the contractual language is clear and unambiguous, the literal meaning of the contract controls the dispute, and the language used in the contract is construed using its 'plain, ordinary, and popular sense.'" *West v. Shelby Cnty. Healthcare Corp.*, 459 S.W.3d 33, 42 (Tenn. 2014) (internal citation omitted). It is only when contractual language is ambiguous (i.e., where more than one reasonable interpretation of the at-issue provision exists) that courts applying Tennessee law may utilize other rules of contractual construction to determine the parties' intent. *Id.* In this case, the parties dispute the meaning of several of the Policy's provisions. It, however, is unnecessary for the Court to resolve all these

6

disputes as the Policy unambiguously does not cover damages or losses caused directly or indirectly by viruses regardless of how the other disputed provisions are construed.

The Policy's Property Choice Form—which forms the basis of Walters & Mason's claims [Doc. 99 at ¶¶ 26, 31, 103]—states the following:

1. We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss or damage:

   ***

   g. "Fungus", Wet Rot, Dry Rot, Bacteria or Virus

   Presence, growth, proliferation, spread or any activity of "fungus," wet rot, dry rot, bacteria or virus.
   But if direct physical loss or direct physical damage to Covered Property by a "Specified Cause of Loss" results, we will pay for the resulting loss or damage caused by that "Specified Cause of Loss".

   This Exclusion does not apply:

   (1) When "fungus," wet rot, dry rot, bacteria or virus results from fire or lightning; or

   (2) To the extent that coverage is provided in the Additional Coverage(s) – "Fungus," Wet Rot, Dry Rot, Bacteria or Virus - Limited Coverage with respect to loss or damage by a cause of loss other than fire or lightning.

[Doc. 99-1 at 205–06]. The Policy defines "fungus" as "any type or form of fungus, including mold or mildew, and any mycotoxins, spores, scents or by-products produced or released by fungi." [*Id.* at 180]. It further defines "Specified Cause of Loss" as "fire; lightning; explosion; windstorm or hail; smoke; aircraft or vehicles; riot or civil commotion; vandalism; 'Sinkhole Collapse'; 'Volcanic Action'; falling objects; weight of snow, ice or sleet; water damage, 'Sprinkler Leakage'; 'Theft'; or 'Building Glass' breakage." [*Id.*]. Every other word in the above exclusion is undefined and therefore "must be interpreted fairly and reasonably, giving the language its usual and ordinary meaning." *Naifeh v. Valley Forge Life Ins. Co.*, 204 S.W.3d 758,

7

768 (Tenn. 2006). Considering the foregoing, the Court finds that the Policy unambiguously does not cover losses and damages resulting either directly or indirectly from viruses, including COVID-19, absent special circumstances not alleged to be present in this case.[2] [3]

Walters & Mason's arguments to the contrary are not persuasive. It first argues that the "'Fungus', Wet Rot, Dry Rot, Bacteria or Virus" exclusion quoted above does not apply to its COVID-19-related business losses because "Hartford chose *not* to include a standalone 'virus' or 'virus or bacteria' exclusion, *except* in a state-specific endorsement applicable to New York." [Doc. 102 at 23 (emphasis in original)]. But Hartford was not required to list a virus exclusion separately for such an exclusion to bar coverage. So long as the Policy's language unambiguously shows that losses resulting from viruses are not covered, then it is immaterial whether the Policy's exclusion is listed on its own or alongside any other excluded cause of loss. *See West*, 459 S.W.3d at 42 ("If the contractual language is clear and unambiguous, the literal meaning of the contract controls the dispute[.]").

Perhaps recognizing this, Walters & Mason next asserts that the meaning of "virus" in the "'Fungus', Wet Rot, Dry Rot, Bacteria or Virus" exclusion is ambiguous because the Policy also contains the separate virus-only exclusion in one of its New York endorsements. [Doc. 102 at 27]. The Court disagrees. The Policy, like many insurance contracts, contains multiple state-specific endorsements that modify the Policy's terms as to the risks insured in specific states. For risks

---

[2] In reaching this conclusion, the Court joins a number of courts across the country that have similarly held that the specific language of this exclusion precludes insureds from recovering their COVID-19-related business losses. *See French Laundry Partners, LP v. Hartford Fire Ins. Co.*, 535 F. Supp. 3d 897, 901–02 (N.D. Cal. 2021); *Little Stars, LLC v. Sentinel Ins. Co.*, 554 F. Supp. 3d 378, 385–86 (D. Conn. 2021); *Hilco, Inc. v. Hartford Fire Ins. Co.*, 533 F. Supp. 3d 1299, 1301–02 (N.D. Ga. 2021); *Lulu's Fashion Lounge LLC v. Hartford Fire Ins. Co.*, 598 F. Supp. 3d 888, 896–97 (E.D. Cal. 2022).

[3] Walters & Mason has not alleged or otherwise argued that its COVID-19-related business losses stem from a "Specified Cause of Loss," that COVID-19 resulted from "fire or lightning," or that the Policy's "'Fungus,' Wet Rot, Dry Rot, Bacteria or Virus – Limited Coverage" provision applies to its COVID-19-related business losses.

8

insured in New York, the Policy deletes the general "'Fungus', Wet Rot, Dry Rot, Bacteria or Virus" exclusion and replaces it with two separate endorsements, one for "Fungus, Wet Rot and Dry Rot" and another for the "Exclusion of Loss Due to Virus or Bacteria" [Doc. 99-1 at 170–01]. Notably, the New York "Fungus, Wet Rot and Dry Rot" endorsement provides for greater coverage under the Policy for losses resulting from fungus, wet rot, or dry rot,[4] while the "Exclusion of Loss Due to Virus or Bacteria" endorsement excludes not only losses resulting from bacteria or viruses, but also those resulting from any "other microorganism that induces or is capable of inducing physical distress, illness or disease." [*Id.*]. In other words, the New York endorsements simply change the extent to which certain risks are covered by the Policy in New York. In doing so, the endorsements do not render the meaning of "virus" ambiguous. Rather, the term "virus" maintains its ordinary meaning under both the general "'Fungus', Wet Rot, Dry Rot, Bacteria or Virus" exclusion and the New York "Exclusion of Loss Due to Virus or Bacteria" endorsement.

Walters & Mason next argues that the "'Fungus', Wet Rot, Dry Rot, Bacteria or Virus" exclusion does not apply to its COVID-19-related business losses because "the terms 'fungus,' 'wet rot,' 'dry rot,' 'bacteria' and 'virus' also appear together in the "'Fungus,'' Wet Rot, Dry Rot, Bacteria and Virus – Limited Coverage' provision, which has a limit '[a]t each premises.'" [Doc. 102 at 27–28]. It suggests that because the "'Fungus,' Wet Rot, Dry Rot, Bacteria and Virus – Limited Coverage" provision describes the coverage it affords in a "localized or discrete way with respect to insured's property," the "'Fungus', Wet Rot, Dry Rot, Bacteria or Virus" exclusion either cannot be construed as applying to such a wide-ranging event as the COVID-19 pandemic or is at the very least ambiguous. [*Id.*]. The Court, however, fails to see how the the "'Fungus,'

---

[4] Specifically, the New York "Fungus, Wet Rot and Dry Rot" endorsement extends coverage "when 'fungus', wet rot or dry rot results from a Covered Cause of Loss." [Doc. 99-1 at 170].

9

Wet Rot, Dry Rot, Bacteria and Virus – Limited Coverage" provision's alleged focus on localized injuries renders the "'Fungus', Wet Rot, Dry Rot, Bacteria or Virus" exclusion inapplicable or ambiguous. The "'Fungus,' Wet Rot, Dry Rot, Bacteria or Virus – Limited Coverage" provision is an exception to the general "'Fungus', Wet Rot, Dry Rot, Bacteria or Virus" exclusion, and any limitations on its scope affect only what limited coverage is available, not what causes of loss are encompassed by the general exclusion. [*See* Doc. 99-1 at 157, 205–06]. The scope of the general "'Fungus', Wet Rot, Dry Rot, Bacteria or Virus" exclusion is determined by the exclusion's own terms, and as the Court has already noted, these terms unambiguously establish that the Policy does not cover losses resulting either directly or indirectly from viruses absent certain conditions which are not alleged to be appliable here. Therefore, the Court finds that the "'Fungus,' Wet Rot, Dry Rot, Bacteria or Virus – Limited Coverage" provision does not render the general "'Fungus', Wet Rot, Dry Rot, Bacteria or Virus" exclusion ambiguous or inapplicable to Walters & Mason's COVID-19-related business losses.

Finally, Walters & Mason argues that the Policy covers its COVID-19-related business losses because "Hartford chose not to include an exclusion with the term 'pandemic.'" [Doc. 102 at 28]. But just as Hartford was not required to include a standalone virus exclusion to bar coverage for virus-caused losses, neither was it required to include the term "pandemic" in an exclusion. A "pandemic" is "an outbreak of a disease that occurs over a wide geographic area (such as multiple countries or continents) and typically affects a significant proportion of the population[.]" *Pandemic*, WERRIAM-WEBSTER ONLINE, https://www.merriam-webster.com/dictionary/pandemic (last visited May 27, 2025). For there to be a "pandemic," there must necessarily be an underlying disease-causing agent. If that agent is a virus, as is the case here, then any losses resulting directly or indirectly from that virus—including after the virus has caused a "pandemic"—are already

excluded from coverage under the Policy pursuant to the unambiguous terms of the "'Fungus', Wet Rot, Dry Rot, Bacteria or Virus" exclusion. [*See* Doc. 99-1 at 205–06]. Therefore, it was not necessary for Hartford to include a separate "pandemic" exclusion in the Policy to bar coverage for losses like Walters & Mason's COVID-19-related business losses.

Accordingly, none of Walters & Mason's arguments alter the Court's conclusion that the Policy's terms unambiguously show that it does not cover losses resulting either directly or indirectly from viruses under Tennessee law. [*See* Doc. 99-1 at 205–06]. As a result, Walters & Mason's COVID-19-related business losses are not covered by the Policy regardless of whether Tennessee or Pennsylvania law governs the Policy's interpretation. *See Ungarean*, 323 A.3d at 610 (holding that COVID-19 was not a covered cause of loss under an insurance policy with materially similar terms). And because the Policy does not cover Walters & Mason's COVID-19-related business losses, Hartford did not breach the Policy by denying coverage for those losses nor was that denial made in bad faith. *See Palmer v. Nationwide Mut. Fire Ins. Co.*, 723 S.W.2d 124, 126 (Tenn. Ct. App. 1986) ("[B]efore there can be a recovery of penalty under T.C.A. § 56-7-105, (1) the policy of insurance must, by its terms, have become due and payable…"); *Cracker Barrel Old Country Store v. Cincinnati Ins. Co.*, 499 F. App'x 559, 568 (6th Cir. 2012) (holding that a bad faith denial claim failed under Tennessee law where the denied loss was not covered by the relevant insurance policy). Consequently, none of Walters & Mason's claims can survive the instant Motion.

## IV. CONCLUSION

For the foregoing reasons, Hartford's Motion [Doc. 100] is **GRANTED**, and this matter is hereby **DISMISSED WITH PREJUDICE**. A separate judgment will enter.

11

**SO ORDERED.**

/s/ *Charles E. Atchley, Jr.*
**CHARLES E. ATCHLEY, JR.
UNITED STATES DISTRICT JUDGE**